McKINSTER, J.
I respectfully dissent.
Unlike the majority, I believe that the complaint sufficiently pleads the elements of a cause of action for negligent misrepresentation. Since Sabo & Deitsch’s summary judgment motion does not establish that one or more of those elements cannot be proven, I submit that the motion was erroneously granted. Accordingly, I dissent from the majority’s conclusion that the judgment should be affirmed.
While the majority weaves together “various threads” (maj. opn., ante, at p. 840) in order to reach its conclusion, those disparate arguments tend to obscure the only two issues before us: whether the complaint pleads the elements of the tort of negligent misrepresentation, and if so, whether Sabo & Deitsch has established as a matter of law that one or more of those elements cannot be proven.
A. The Complaint Asserts a Claim for Damages for Negligent Misrepresentation.
There is no doubt that B.L.M. pleaded a cause of action for professional negligence. The question is, did it also plead facts sufficient to constitute each of the elements of another cause of action, for negligent misrepresentation?
Preliminarily, I note that the title of the complaint—“Complaint for Legal Malpractice”—is irrelevant to the issue of whether that pleading sufficiently *842 alleges facts sufficient to constitute some cause of action other than professional negligence. “[W]e are not limited to plaintiffs’ theory of recovery in testing the sufficiency of their complaint.... but instead must determine if the factual allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have, of course, long since departed from holding a plaintiff strictly to the ‘form of action’ he has pleaded . . . .” (Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].) This is true even though that theory is expressly stated in the label the plaintiff affixed to the complaint. “[Cjourts regard substance and not labels in determining the sufficiency of a pleading.” (Hutnick v. United States Fidelity & Guaranty Co. (1988) 47 Cal.3d 456, 464, fn. 6 [253 Cal.Rptr. 236, 763 P.2d 1326].) “ ‘It is an elementary principle of modem pleading that the nature and character of a pleading is to be determined from its allegations, regardless of what it may be called, and that the subject matter of an action and issues involved are determined from the facts alleged rather than from the title of the pleadings ....’” (Jaffe v. Carroll (1973) 35 Cal.App.3d 53, 57 [110 Cal.Rptr. 435], quoting from McDonald v. Filice (1967) 252 Cal.App.2d 613, 622 [60 Cal.Rptr. 832]; accord, 1 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 3d ed. 1996) § 22.2, p. 22-4.) In short, a plaintiff is entitled to relief on any claim supported by the facts pleaded even if that claim is not mentioned in the title of the complaint.
Thus, the majority’s criticism of B.L.M. for failing to give “notice that there was an additional theory of recovery” (maj. opn., ante, at p. 834) is unfounded. Notice of the nature of the causes of action pleaded in any complaint is provided by the factual allegations of that complaint.[1] (Cf. Harman v. City and County of San Francisco (1972) 7 Cal.3d 150, 157 [101 Cal.Rptr. 880, 496 P.2d 1248].) Any defendant that relies solely on the title of the complaint does so at its own peril.
*843 In this case, what must those factual allegations establish? Negligent misrepresentation is a species of the tort of deceit. (Civ. Code, § 1710, subd. 2.) The elements of negligent misrepresentation are that (1) a representation of material fact was made, (2) the representation was false, (3) the defendant made the representation without reasonable grounds for believing it to be true, (4) the representation was intended to induce the defendant to take some action in reliance upon it, (5) the plaintiff reasonably relied upon the truth of the representation, and (6) the plaintiff sustained damage as a result of that reliance. (Civ. Code, §§ 1709 & 1710; Gagne v. Bertran (1954) 43 Cal.2d 481, 487-488 [275 P.2d 15]; Gonsalves v. Hodgson (1951) 38 Cal.2d 91, 100-101 [237 P.2d 656]; BAJI No. 12.45.)
B.L.M.’s complaint alleges: that the project was not economically feasible if prevailing wages had to be paid; that from July of 1987 until the scheduled closing date in April of 1988, Sabo & Deitsch represented to B.L.M. that prevailing wages would not have to be paid; that the representation was incorrect; that Sabo & Deitsch would have known that the representation was incorrect had they exercised reasonable skill, prudence and diligence; that B.L.M. spent money to plan and develop the project in reasonable reliance upon the representation; and that B.L.M. had been damaged as a result of its reliance on the representation.
Sabo & Deitsch contends that these allegations are insufficient to plead either that the representation was made without reasonable grounds for believing it to be true or that Sabo & Deitsch intended B.L.M. to rely upon the representation. While the majority correctly rejects the former contention, it agrees with the latter. (Maj. opn., ante, at pp. 834-835.) In addition, it holds that the complaint fails to plead the elements of negligent misrepresentation for a second reason: “B.L.M. failed to sufficiently allege . . . that the reliance of B.L.M. was justifiable under the circumstances of the case.” {Id., at p. 835.) I disagree.
1. Sabo & Deitsch’s Intent to Induce Reliance Was Sufficiently Pleaded.
The majority is correct when it observes that the complaint does not expressly allege that Sabo & Deitsch intended to induce B.L.M. to rely on its representation. (Maj. opn., ante, at p. 836.) However, it is incorrect when it assumes that such an express allegation of that ultimate fact is required. A complaint sufficiently pleads the elements of a cause of action if the elements either are alleged expressly “or can be inferred by reasonable intendment from the matters which are pleaded” expressly. (Krug v. Meeham (1952) 109 Cal.App.2d 274, 277 [240 P.2d 732]; Rosenfeld, Meyer & Susman *844 v. Cohen (1983) 146 Cal.App.3d 200, 223 [194 Cal.Rptr. 180]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 332, p. 383.) A defendant’s intent to induce a plaintiff to alter his position can be inferred from the defendant’s knowledge that the plaintiff would act in reliance upon the representation. (Gagne v. Bertran, supra, 43 Cal.2d at p. 488; Eddy v. Sharp (1988) 199 Cal.App.3d 858, 864 [245 Cal.Rptr. 211].)
Here, the complaint alleges that B.L.M. proposed to the city to build the project; that B.L.M. and the other parties determined that the need to pay prevailing wages would render the project economically unfeasible; that Sabo & Deitsch was involved in those discussions; that as a result of those financial concerns the project was restructured; that Sabo & Deitsch told B.L.M. on July 2, 1987, that the revised project would not be subject to the prevailing-wage requirement; that the parties entered into a formal development agreement on July 7,1987; that simultaneously with that agreement the city appointed Sabo & Deitsch as its special counsel and “as Bond Counsel for the Projects”; that the city charged Sabo & Deitsch with the preparation of whatever documentation was required, including “documents as may be necessary to provide for the issuance of the tax-exempt bonds to finance the Projects”; and that Sabo & Deitsch repeatedly thereafter represented that the prevailing wage requirement did not apply. In addition, B.L.M. alleged that it was a third party beneficiary of the contract between Sabo & Deitsch and the city, which necessarily implies that Sabo & Deitsch intended its services under that contract to benefit B.L.M. (See Jones v. Aetna Casualty & Surety Co. (1994) 26 Cal.App.4th 1717, 1724 [33 Cal.Rptr.2d 291].) In my view, this is a sufficient pleading of Sabo & Deitsch’s knowledge and intent that B.L.M. would rely upon its opinion. (See 5 Witkin, Cal. Procedure, supra, Pleading, § 663, pp. 112-114.)
The majority summarizes the allegations supporting the inference of intent as being “that if Sabo & Deitsch said it they must have intended B.L.M. to rely on it.” (Maj. opn., ante, at p. 836.) A fairer characterization of the complaint would be that B.L.M. proposed the project to the city, Sabo & Deitsch knew that B.L.M. would not go ahead with the project unless it could avoid paying prevailing wages, Sabo & Deitsch was charged with doing whatever legal work was necessary to implement the project, and Sabo & Deitsch told B.L.M. that the requirement would not apply to the project as restructured. From those allegations, it may be reasonably inferred that Sabo & Deitsch intended B.L.M. to rely upon its opinion.
2. B.LM.’s Reasonable Reliance Is Sufficiently Pleaded.
The complaint alleges that B.L.M. “reasonably relied to their detriment on” Sabo & Deitsch’s opinion. The majority acknowledges that B.L.M. *845 adequately alleged its actual reliance on the representation of Sabo & Deitsch, but contends that the complaint fails to allege facts sufficient to establish that the reliance was justifiable. (Maj. opn., ante, at p. 836.) I assume that the majority is not attempting to draw any distinction between justifiable reliance and reasonable reliance. Instead, the majority appears to argue either (a) that B.L.M.’s allegation is an insufficient conclusion of law or (b) that, while it would have been sufficient if viewed in isolation, other facts pleaded in the complaint demonstrate that, as a matter of law, B.L.M.’s reliance was unreasonable. I disagree with both alternatives.
a. Reasonable Reliance May Be Pleaded as an Ultimate Fact.
The majority cites no authority for the proposition that, in pleading reliance in the context of a cause of action for negligent misrepresentation, a plaintiff must allege each of the circumstances which render its reliance reasonable.
While a cause of action for fraud must be specifically pleaded, the rationale for that requirement is that “ ‘allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense.’ ” (Committee on Children’s Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660], quoting what is now 5 Witkin, Cal. Procedure, supra, Pleading, § 662, p. 111.) Since allegations of negligent misrepresentation, as opposed to intentional fraud, do not question the defendant’s character, it is doubtful that the same requirement applies to them. (Cf. 5 Witkin, Cal. Procedure, supra, Pleading, § 663, p. 113 [comparing the pleading standards for “other intentional torts,” (italics added)]; but see Committee on Children’s Television, Inc., supra, at pp. 215-216 [applying without discussion the stricter pleading standard to both intentional and negligent misrepresentation].)
Even assuming that the requirement of specific pleading does apply to negligent misrepresentation actions, and assuming further that it applies to the sub-element of the reasonableness of the plaintiff’s reliance, the requirement is satisfied here. While B.L.M.’s allegation that its reliance was reasonable is conclusory, it is not objectionable on that basis. The specific-pleading requirement “does not require the allegation of evidentiary facts, but only that the ultimate facts must be pleaded.” (Estate of Bixler (1924) 194 Cal. 585, 590 [229 P. 704].) It does not “exclude conclusions of fact but only conclusions of law.” (Ibid.) Just as an allegation that a particular act was performed negligently is a conclusion of fact (id., p. 589; 4 Witkin, Cal. Procedure, supra, Pleading, § 341, p. 394), so also must be the allegation that a particular act of reliance was performed reasonably.
*846 And even assuming further that the pleading of the reasonableness of the reliance is not sufficiently specific, what is the consequence? I submit that, at this late date, that lack of specificity should either be ignored, or B.L.M. should be granted leave to amend its complaint to allege specific facts justifying its reliance on Sabo & Deitsch’s misrepresentation.
The modem view is to treat an allegation of an element of a fraud cause of action through inferential pleading or conclusions of law as a matter of uncertainty rather than an outright failure to allege that element, and to uphold the sufficiency of the complaint in the absence of a special demurrer. (5 Witkin, Cal. Procedure, supra, Pleading, §663, pp. 112-114.) This is consistent with the general mle “that defects of form appearing on the face of the complaint must be raised by demurrer or are waived, and this mle applies to most of the grounds of special demurrer.” (Id,., § 909, p. 347.) Sabo & Deitsch never demurred to the complaint at all, either generally or specially. Accordingly, I would hold that any objection to a lack of specificity on the narrow issue of the reasonableness of B.L.M.’s reliance has been waived.
Even were a contrary view to be taken, and it were to be concluded that the lack of specificity had not been waived, that omission is not irreparable. Sabo & Deitsch’s motion for summary judgment was addressed solely to the professional negligence cause of action. Since it did not acknowledge the existence of a cause of action for negligent misrepresentation, it inferentially asserted that no such cause of action had been sufficiently pleaded. To the extent that a summary judgment motion challenges the sufficiency of the pleadings, it is tantamount to and should be treated as a motion for judgment on the pleadings. (Sequoia Ins. Co. v. Superior Court (1993) 13 Cal.App.4th 1472, 1478, 1481 [16 Cal.Rptr.2d 888]; People ex rel. Dept, of Transportation v. Outdoor Media Group (1993) 13 Cal.App.4th 1067, 1074 [17 Cal.Rptr .2d 19].) Accordingly, as to the negligent misrepresentation cause of action, the motion must be treated as a motion for judgment on the pleadings.
By granting the motion as to the negligent misrepresentation claim, the trial court effectively granted a motion for judgment on the pleadings without leave to amend. However, the established rule is that upon granting such a pleading motion, “ ‘great liberality’ ” should be used in allowing amendments. (Higgins v. Del Faro (1981) 123 Cal.App.3d 558, 565 [176 Cal.Rptr. 704], quoting from Estate of Hunter (1961) 194 Cal.App.2d 859, 865 [15 Cal.Rptr. 556].) Thus, “. . . when the facts stated indicate that the party probably has a good cause of action or defense, but that it has been pleaded imperfectly or defectively, and the defects have not been called to *847 his attention by demurrer or by a notice of motion for judgment on the pleadings, the court should not grant the motion without first giving the party an opportunity to elect whether he will stand on his pleadings or amend them. The granting of the motion without leave to amend would in many cases be an absolute denial of justice, and is directly opposed to the policy of the law that cases should be tried and decided on the merits.” (MacIsaac v. Pozzo (1945) 26 Cal.2d 809, 815-816 [161 P.2d 449]; accord, Higgins, pp. 564-565.) “‘[W]here an amendment provides “‘merely the addition of matters essential to make the original cause of action complete’ ” the amendment should certainly be allowed by the court.’ ” (123 Cal.App.3d at p. 565.)
B.L.M. was given no leave to amend in the trial court. Nor does the majority afford it the opportunity to amend now to cure the minor aspects in which its allegation of reasonable reliance may have been conclusionary, even though that defect was raised for the first time by the majority. I submit that such denials are abuses of discretion. To the extent that the complaint fails to specifically plead each element of negligent misrepresentation, B.L.M. should be given at least one chance to cure those imperfections.
b. The Circumstances Pleaded in the Complaint Do Not Establish as a Matter of Undisputed Fact That BLM.’s Reliance Was Unreasonable.
A plaintiff’s reliance is unjustifiable “ ‘[i]f the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable ....’” (Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1240 [44 Cal.Rptr.2d 352, 900 P.2d 601], quoting Seeger v. Odell (1941) 18 Cal.2d 409, 415 [115 P.2d 977, 136 A.L.R. 1291].) “ ‘Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff’s reliance is reasonable is a question of fact.’ ” (Alliance Mortgage Co., supra, p. 1239, quoting Blankenheim v. E. F. Hutton & Co. (1990) 217 Cal.App.3d 1463, 1475 [266 Cal.Rptr. 593].) The majority relies on a variety of facts pleaded in the complaint to support its conclusion that B.L.M.’s reliance on Sabo & Deitsch’s misrepresentation was, as a matter of law, unreasonable. I am unpersuaded.
First, the majority notes that the complaint alleges that in early 1987, B.L.M. proposed that the project be built by the city with public funding. B.L.M.’s attorneys, acknowledging that prevailing wages would have to be paid under those circumstances, drafted a proposed agreement which expressly provided for the payment of prevailing wages. The majority infers *848 that, prior to drafting that contract, B.L.M.’s attorneys rendered a “legal opinion directly contrary to the Sabo & Deitsch opinion on which B.L.M. subsequently relied.” (Maj. opn., ante, at p. 836.) Given that inconsistent opinion from its own attorney, it argues, B.L.M.’s reliance on Sabo & Deitsch’s opinion cannot be justified.
This argument ignores the fact that the opinion from B.L.M.’s attorneys concerned a project built directly by the city. By contrast, Sabo & Deitsch’s opinion concerned the legal obligation to pay prevailing wages on a materially different project: one that would be built by B.L.M. and subsequently acquired by the city or its redevelopment agency. Since the two opinions dealt with materially different circumstances, reliance on both is neither inconsistent nor necessarily unreasonable.
Next, noting that Sabo & Deitsch was the counsel for the city, the adverse party in this transaction, the majority argues that reliance by B.L.M. on its opinion could never be justifiable. It supports that contention with citations to cases in which one party to litigation attempted to sue the attorney for an opposing party in that litigation, on either negligence or negligent misrepresentation theories. In a proceeding between two adverse parties, it is clear that one party is not an intended beneficiary of the advice given or other professional services rendered by the attorney for the opposing party. (Norton v. Hines (1975) 49 Cal.App.3d 917, 921 [123 Cal.Rptr. 237]; accord, Weaver v. Superior Court (1979) 95 Cal.App.3d 166, 182 [156 Cal.Rptr. 745]; Parnell v. Smart (1977) 66 Cal.App.3d 833, 837-838 [136 Cal.Rptr. 246]; Omega Video Inc. v. Superior Court (1983) 146 Cal.App.3d 470, 480-481 [194 Cal.Rptr. 574].)
On the other hand, in the absence of the absolute adversity of litigation, the question of whether there is a duty owed to a third party, entitling that party to rely upon statements made by another party’s attorney, becomes a much closer question, which turns on the facts of each case. Under some factual circumstances, a duty is found to be lacking. (E.g., Goodman v. Kennedy (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737].[2]) Under others, courts have found that the attorney did owe a duty to the third party, and thus the third party could reasonably rely upon the attorney’s statements. (Cicone v. URS Corp. (1986) 183 Cal.App.3d 194, 207-211 [227 Cal.Rptr. 887]; Courtney v. Waring (1987) 191 Cal.App.3d 1434, 1443-1444 [237 *849 Cal.Rptr. 233]; Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices (1989) 207 Cal.App.3d 1277, 1284 [255 Cal.Rptr. 483].)
Here, B.L.M. and the city were not adverse parties in litigation.[3] Instead, they were cooperating in trying to build the project. While they were negotiating at arm’s length regarding some aspects of the deal, their interests concerning others coincided. In particular, they were both interested in having the bonds issued by which the project was to be financed. Accordingly, while Sabo & Deitsch was designated as special counsel for the city, it was also designated as bond counsel “for the project,” suggesting that it was representing both parties in that joint endeavor. Given the ambiguity of the nature and extent of Sabo & Deitsch representation, this is not one of those “rare case[s] where the undisputed facts leave no room for a reasonable difference of opinion” on the question of whether a plaintiff’s reliance was reasonable. (Alliance Mortgage Co. v. Rothwell, supra, 10 Cal.4th at p. 1239.)
Finally, the majority appears to contend that the reliance upon Sabo & Deitsch’s representation could not have been reasonable because it was a legal opinion rather than a representation of fact. (Maj. opn., ante, at pp. 839-840.) However, as the majority stated earlier in its own opinion: “ ‘Under certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is “not a casual expression of belief’ but “a deliberate affirmation of the matters stated,” it may be regarded as a positive assertion of fact. [Citation.]’ ” (Maj. opn., ante, at p. 834, quoting from Bily v. Arthur Young & Co. (1992) 3 Cal.4th 370, 408 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835].)
As noted above, the reasonableness of a plaintiff’s reliance is a question of fact unless no reasonable finder of fact could disagree. I find the facts alleged in the complaint to be sufficient to plead that element and sufficiently debatable to preclude a court from finding that B.L.M.’s reliance was unreasonable as a matter of law.
In summary, although pleaded in just one count, the complaint asserts claims for damages under two theories, negligence and negligent misrepresentation.
*850 B. The Motion Fails to Establish That B.LM. Cannot Prevail on a Negligent Misrepresentation Claim.
Having established that the pleading is sufficient to support a claim for negligent misrepresentation, I now proceed to the second question, which because of its contrary conclusion the majority never reached: Did Sabo & Deitsch establish that B.L.M. cannot prevail on its negligent misrepresentation claim?
In challenging B.L.M.’s ability to prove the elements of its claims, Sabo & Deitsch’s summary judgment motion did not seek to establish that Sabo & Deitsch had not made the representation, that the representation was immaterial or true, that it had reasonable grounds for believing the representation to be true, or that B.L.M. had not reasonably relied on the truth of the representation to its detriment. Instead, the motion was directed solely to the issue of whether Sabo & Deitsch owed B.L.M. a duty of care.
Sabo & Deitsch had not been hired by B.L.M. and did not have an attorney-client relationship with B.L.M. However, the absence of that relationship is not determinative of the existence and extent of Sabo & Deitsch’s duty toward B.L.M.
“Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights.” (Civ. Code, § 1708.) “Civil liability for injury to others is imposed based on causes of action in tort,” including negligence and negligent misrepresentation. (Bily v. Arthur Young & Co., supra, 3 Cal.4th at p. 396.) Liability for the potentially limitless consequences of negligent acts is judicially constrained by the concept of duty. (Bily, p. 397.) Thus, rather than being an aid to analysis, the existence of duty is a conclusion, “ ‘ “an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.” ’ ” (Ibid., quoting Dillon v. Legg (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)
In Bily v. Arthur Young & Co., supra, 3 Cal.4th 370, our Supreme Court adopted the Restatement Second of Torts, section 552, subdivision (2), page 127, to define the class of persons who are entitled to protection from negligent misrepresentations (Bily, 3 Cal.4th p. 414) made by attorneys, accountants, and other suppliers of commercial information (id., p. 410.) That subdivision provides that liability for such negligent misrepresentations “is limited to loss suffered [f] (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information *851 or knows that the recipient intends to supply it; and [¶] (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.” (Rest.2d Torts, § 552, subd. (2), p. 127.)
A defendant’s intention to benefit the plaintiff is not dependent upon the subjective mental state of the defendant. Instead, the rule adopted by the Supreme Court “attempts to identify those situations in which the supplier undertakes to supply information to a third party whom he or she knows is likely to rely on it in a transaction that has sufficiently specific economic parameters to permit the supplier to assess the risk of moving forward.” (Bily v. Arthur Young & Co., supra, 3 Cal.4th at p. 409.) The existence of that knowledge is determined according to “an objective standard that looks to the specific circumstances (e.g., supplier-client engagement and the supplier’s communications with the third party) to ascertain whether a supplier has undertaken to inform and guide a third party with respect to an identified transaction or type of transaction.” (Id., p. 410, italics omitted.)
The only information before us concerning the terms of Sabo & Deitsch’s engagement as counsel for the city and the redevelopment agency and as bond counsel for the project as a whole indicates that the law firm was engaged to perform whatever legal services were necessary to implement the apartment project and the financing of the project. Since the project was proposed by B.L.M. and B.L.M. was expressly recognized as the intended developer of the project, and since B.L.M. had informed the city in the presence of Sabo & Deitsch that the project could not proceed if prevailing wages had to be paid, the record suggests that Sabo & Deitsch’s opinion that the prevailing-wage requirement did not apply to the restructured project was intended to guide all the parties to the various agreements, including B.L.M. The delivery of the opinion to B.L.M. (an allegation which Sabo & Deitsch denied in their answer but which was not one of the factual contentions which was addressed in their statement of undisputed facts) supports the same conclusion. Thus, an objective examination of the circumstances of the delivery of the opinion indicates that the Bily test for an intention to benefit is met: Sabo & Deitsch undertook to supply information to B.L.M., a third party who Sabo & Deitsch knew was likely to rely on it by pursuing a project familiar to Sabo & Deitsch.
Sabo & Deitsch’s summary judgment motion did not establish, or even attempt to establish, that any of those facts could not be proven. The motion therefore fails to establish that B.L.M. is outside of the limits of liability for those damaged by negligent misrepresentations, as those limited are defined by Bily. Accordingly, the motion failed to establish that Sabo & Deitsch *852 owed no duty to B.L.M. Since that was the only ground for the summary judgment motion, I conclude that the motion was erroneously granted and that the resulting judgment should be reversed.
Since the motion did not seek, in the alternative, a summary adjudication of any issues, I do not address whether Sabo & Deitsch succeeded in demonstrating that it is not liable to B.L.M. for professional negligence as opposed to negligent misrepresentation.. Nor do I address B.L.M.’s argument regarding Sabo & Deitsch’s use of an unlicensed attorney, both because I would reverse the judgment on other grounds, and because that issue is not within the scope of the complaint as currently pleaded.
I would reverse.
Appellant’s petition for review by the Supreme Court was denied September 17, 1997. Kennard, J., was of the opinion that the petition should be granted.

Here, as will be discussed, those factual allegations provided notice to Sabo & Deitsch that B.L.M. was asserting a negligent misrepresentation theory.
Sabo & Deitsch was further alerted to that fact by B.L.M.’s opposition to the summary judgment motion. There, in arguing that Sabo & Deitsch can be liable to B.L.M. despite the lack of an attorney-client relationship, B.L.M. stated: “On August 27, 1992, the Supreme Court dispelled any questions on the matter in Bily v. Arthur Young & Co., (1992) 3 Cal.4th 370, 11 Cal.Rptr.[2d] 51[, 834 P.2d 745, 48 A.L.R.5th 835], The Court defined the tort as negligent misrepresentation . . . .” B.L.M. also noted that in Bily, the Supreme Court approved a series of Court of Appeal cases which “ ‘have endorsed liability for negligence or negligent misrepresentation in the dissemination of commercial information to persons who were intended beneficiaries of the information. In several of these cases, $552 of the Restated of Tort [sic] was consulted or relied on as a general statement of the rule of law.’ ’’
Sabo & Deitsch received and understood this “notice” but chose to ignore it, as confirmed by its own reply to B.L.M.’s opposition: “Defendants [sic; plaintiffs] offer various authorities which are inapplicable to this legal malpractice action. . . . [<U Defendants acknowledge that liability of an attorney to third persons may exist in cases of. . . negligent misrepresentation .... However, this is not such a case.”

Goodman v. Kennedy never specifically addressed the issue of the reasonableness of any reliance, because in that case there was “no allegation that the advice was ever communicated to plaintiffs and hence no basis for any claim that they relied upon it. . . .” (18 Cal.3d at p. 343.)

Thus, the facts here are distinguishable from those in Flatt v. Superior Court (1994) 9 Cal.4th 275 [36 Cal.Rptr.2d 537, 885 P.2d 950], upon which the majority mistakenly relies. There, the issue is the extent of a duty owed by an attorney to advise a new client seeking to sue an existing client of the attorney’s firm. Moreover, since Flatt involves a claim of legal malpractice rather than any claim of misrepresentation, it sheds no light on the issue of reasonable reliance.